

**'08 CIV 5610**

336-08/PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
SOLOMON SEA ENTERPRISES S.A.,

                              Plaintiff,

          -against-

ENERGY SHIPPING S.P.A.,
                              Defendant.
--------------------------------------------------------x

**08 CV**

**VERIFIED COMPLAINT**

     Plaintiff, SOLOMON SEA ENTERPRISES S.A. ("SOLOMON SEA"), for its Verified

Complaint against Defendant ENERGY SHIPPING S.P.A. ("ENERGY SHIPPING"), alleges

upon information and belief as follows:

     1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party. This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331. Federal jurisdiction also exists because the action arises under the New York Convention

on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or

the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times material hereto, Plaintiff SOLOMON SEA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address in Panama City, Panama.

3.     At all times relevant hereto, Defendant ENERGY SHIPPING was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Via San Vincenzo 2a, Genoa 16121, Italy.

4.     On or about November 21, 2007, Plaintiff SOLOMON SEA, in the capacity as owner of the M/V ANNA L, entered into a maritime contract of charter party with Defendant ENERGY SHIPPING, as charterer, for one or two laden legs at the charterer's option in the direction of Gibraltar. A copy of the charter party is annexed as **Exhibit A**.

5.     Pursuant to the terms of the charter party, the vessel was duly delivered into service under the charter, and the contract was performed.

6.     Following Defendant's redelivery of the vessel to Plaintiff, Plaintiff submitted a preliminary hire statement, and disputes arose between the parties as to the amounts due and owing for hire.

7.     Despite due demand, ENERGY SHIPPING has refused and/or otherwise failed the pay $170,358.69 which remains due and outstanding.

8.     The charter party provides for the application of English law and all disputes between the parties are to be resolved by the arbitration in London, and SOLOMON SEA specifically reserves its right to proceed in arbitration where arbitration proceedings have been commenced.

9.    This action is brought to obtain jurisdiction over ENERGY SHIPPING and to obtain security in favor of Plaintiff SOLOMON SEA respect to its claims against ENERGY SHIPPING and in aid of London proceedings.

10.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

11.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as an element of Plaintiff's claim.

12.    Plaintiff estimates, as nearly as can be computed, that the legal expenses and arbitral costs of prosecuting the claim in London will be $50,000 and interest on its damages are estimated to be $29,243.67 (calculated at the rate of 8% for a period of two and one half years, the estimated time for completion of the proceedings in London).

**Request for Rule B Relief**

13.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

14.    The total amount to be attached pursuant to the calculations set forth above is **$249,602.36**.

WHEREFORE, Plaintiff SOLOMON SEA ENTERPRISES S.P.A. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$249,602.36** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
      June 20, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff

By: _____

Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)
80 Pine Street
New York, NY  10005
(212) 425-1900

## ATTORNEY VERIFICATION

State of New York   )
                  ) ss.:
County of New York )

PAMELA L. SCHULTZ, being duly sworn, deposes and says as follows:

1.     I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Pamela L. Schultz

Sworn to before me this
2.0  day of June 2008.

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

**1st ORIGINAL**

**TRAMP**MARITIME INC.
23 FILIPPOU str. & AKTI, DILAVERI - PIRAEUS 185 33
TEL.: (+30)210 4133228 - FAX: (+30)210 4133589
e-mail: chartering@trampmaritime.gr

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party**, made and concluded in Genoa,      21st ........................ day of ........*November 2007* ..................... 19.........
2 Between *Messrs. SOLOMON SEA ENTERPRISES S.A. - Panama,*
3 Owners of the good ...................................... Steamship/Motorship *"ANNA L" - See Clause 29 for vessel's description* ..................... of ..............
4 ...............tons gross register, and...................tons net register, having engines of ......................................................indicated horse power
5 and with hull, machinery and equipment in a thoroughly efficient state, and classed .....................................................................................
6 at..................of about..................cubic feet bale capacity, and about......................................tons of 2240 lbs.
7 deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,
8 allowing a minimum of fifty tons) on a draft of .....................feet..............inches on ..........................Summer freeboard, inclusive of permanent bunkers,
9 which are of the capacity of about ..........................................tons of fuel, and capable of steaming, fully laden, under good weather
10 conditions about ..........................knots on a consumption of about ..........................tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,
11 now *trading*
12 ............................................. and *Messrs. ENERGY SHIPPING S.P.A.* ..................... Charterers of the City of *Genoa, Italy* ...............

13 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14 about *a Time Charter Trip with one/two laden legs in Charterers' option direction Gibraltar, in case two laden legs then vessel to*
15 *steam towards Casablanca where the ship will load cargo of rock phos to discharge in Pasadena and then petcoke back to*
*Mediterranean. In case one laden leg only then direction to be United States Gulf but minimum duration guaranteed to be 46*
*days. See also Clause 72 - 1 (one) straight leg only option then to be used only in case vessel missing cancelling dates and*
*Minfreight cancel the Charter Party.* within below mentioned trading limits.
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations*
*hereunder.*
18 Vessel to be placed at the disposal of the Charterers, at *delivery in direct continuation basis on dropping outward last sea pilot GAETA at*
*any time day or night Sundays and holidays included* ...........................................................................................................
19 ...................................................................................................................................................................
20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as
21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be
22 ready to receive *permitted* cargo *as per Clause 49* with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water
ballast, winches and
23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25 dise, including petroleum or its products, in proper containers, excluding *See Clause 70* ...............................................
26 (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between *good* safe port and/or ports in British North
28 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29 Mexico, and/or South America .............................................................................................. and/or Europa
30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31 October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,
32 *always within I.W.L. excluding see Clause 72* ............................................................
33 ...................................................................................................................................................................
34 ...................................................................................................................................................................
35 as the Charterers or their Agents shall direct, on the following conditions:
36     1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; shall pay for the
37 insurance of the vessel, also for all the galvin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service *with all inspection certificates necessary to*
*comply with current requirements at ports of trade.*
39     2. That the Charterers shall provide *whilst on hire* and pay for all the fuel *and diesel* (except *lubricating oil*) as otherwise agreed,
*compulsory and customary* Port Charges, *compulsory and customary* Pilotages, *canals, tolls, towage, stevedoring, tallying,*
*municpally and state taxes, boatage on Charterers' business, cargo taxes, agencies commission for Charterers' business,*
Agencies, Commissions,
40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into
41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44 of six months or more.
45     Charterers are to provide necessary dunnage, *lashing materials* and shifting boards, also any extra fittings requisite for a special trade or unusual cargo,
but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards


EXHIBIT

47  for dunnage, they making good any damage thereto.

48      3.   That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on

49  board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ................................................tons and not more than

50  *See Clause 31*........tons and to be re-delivered with not less than .................................................tons and not more than ...................................................tons.

51      4.   That the Charterers shall pay for the use and hire of the said Vessel at the rate of US$ 46.000= *(Forty-Six thousand Dollars)*

52  ......... United States Currency per *day including overtime to officers and crew for one or two laden legs* ton on vessel's total deadweight carrying capacity, including bunkers and

53  stores, on ...................................................... summer freeboard, per Calendar Month, commencing on and from the day/*hour* of her delivery, as aforesaid, and at

54  and after the same rate for any part of a *day* month, hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55  wear and tear excepted, to the Owners (unless lost) at *on dropping outward last sea pilot one saf port Lebanon or Turkey or Greece or Italy.*

56  *at any time, day and night, Sundays and holidays included* unless otherwise mutually agreed.  Charterers are to give Owners not less than *15 days approximate*

57  notice of vessels expected date of re-delivery, and probable port, *5 days final notice of expected date and place of redelivery and 3/1 days definite notice of date of redelivery.*

58      5.   Payment of said hire to be made *directly to Owners' nominated bank account as per Clause 42* in New York in cash in United States

59  Currency, *every 15 days* semi-monthly in advance, and for the last *15 days* half month or part of same the approximate amount of hire *for the balance*, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62  terers, *see Clause 40*, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day

63  following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they

64  to have the privilege of using vessel at once, such time used to count as hire.

65      Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66  to 2 1/2% commission and such advances shall be deducted from the hire, The Charterers, however, shall in no way be responsible for the application

67  of such advances.

68      6.   That the cargo or cargoes be laden and/or discharged in any dock *safe port* or at any *safe berth* wharf or *safe anchorage* place that Charterers

69  or their Agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70  lie aground.

71      7.   That the whole reach of the Vessel's Hold, *no deck cargo allowed* Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72  accommodations for Supercargo, *if available*, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73  tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

74  paying Owners ...........................................per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

75  incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.

76      8.   That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78  agency; and Charterers are to load, stow, *tally*, and *unsecure, lash, unlash, dunnage,* trim, *secure and discharge* the cargo at their *risk and*

79  expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in *strict* conformity with Mate's or Tally Clerk's receipts.

80      9.   That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments. *In case Charterers demand the change, Charterers to provide substantiated evidence of Master's fault.*

82      10.   That the Charterers shall have permission to appoint a Supercargo, *who is to sign the usual Letter of Indemnity for passengers,* who shall accompany the vessel, *subject to life boat capacity permit,* and see that voyages are prosecuted

83  with the utmost despatch. He is to be furnished with free accommodation, *provided available,* and same fare as provided for Captain's table, Charterers paying at the

84  rate of $10.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85  Clerks, Stevedore's Foreman, etc., Charterers paying *US$ 1.600= per 30 days / pro rata* at the current rate per meal, for all such *cable/*victualling */entertainment.*

86      11.   That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing *in English,* and the

87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88  terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89  sumption of fuel.

90      12.   That the Captain shall use diligence *in care and* in caring for the ventilation of the cargo. *Vessel has only natural ventilation in cargo holds.*

91      13.   That the Charterers shall have the option of continuing this charter for a further period of ....................................................................

92  ....................................................................................................................................................................................................

93  on giving written notice thereof to the Owners or their Agents ..................................................days previous to the expiration of the first named term, or any declared option,

94      14.   That if required by Charterers, time not to commence before *laycan in direct continuation after the vessel completes discharge of her present cargo in Gaeta*.........................................................................and should vessel

95  not have given written notice of readiness on or before ....................................................... but not later than *24.00 hours local time* p.m. Charterers or

96  their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97      15.   That in the event of the loss of time from deficiency *and/or default* of men or stores, fire, breakdown or damages to hull, machinery or equipment,

98  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99  preventing the full working of the vessel, *unless all above is caused by Charterers/Charterers' servants/employees,* the payment of hire shall

cease for the time thereby lost *until the vessel is again in full efficiency and resumes her service from a position not less favourable to the Charterers than that at which such loss of time commenced;* and if upon the voyage the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
101 thereof, and all extra expenses shall be *for Owners' account* deducted from the hire.

102 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103 returned to the Charterers at once. ~~The Act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,~~
104 ~~Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.~~

105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106 purpose of saving life and property.

107 17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~
108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~
109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~ *see Clause 47.*

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and/or sub-hires* for any amounts due under this Charter, including General
Aver-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel.

114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116 York-Antwerp Rules *1994 in London or any amendments thereto* ~~1924, at such port or place in the United States as may be selected by the carrier,~~
~~and as to matters not provided for by these~~

117 ~~Rules, according to the laws and usages at the port of London~~ *London* ~~New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125 ~~United States money,~~

126 ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129 ~~losses, or expense of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131 ~~ship belonged to strangers.~~

132 ~~A Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.~~ *Charterers shall procure that all bills of lading issued during the currency of the charter will contain provision to the effect that General Average shall be adjusted according to York Antwerp rules 1994 or any amendments thereto in London and will include the New Jason Clause. Hire not to contribute to General Average.*

133 20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the
134 cost of replacing same, to be allowed by Owners.

135 21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter,~~ Vessel is to be docked at a
136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~
138 *No drydock unless in case of an emergency.* ...............................................................................................................................................
139 ...............................................................................................................................................

140 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to *see Clause 29* ~~three tons,~~ also
141 providing ropes, falls, slings and blocks *as on board.* If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for
142 same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns ~~and oil~~ *electric lights* for
143 night work, and vessel to give use of electric light ~~when so fitted,~~ but any additional lights over those on board to be at Charterers' expense. The
144 Charterers to have the use of any gear on board the vessel.

45 23. Vessel to work night and day, if required by Charterers, ~~and all winches to be at Charterers' disposal during loading and discharging;~~
46 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~
47 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
48 ~~port, or labor unions, prevent crew from driving winches,~~ shore Winchmen/*Cranemen* to be *employed and* paid by Charterers. ~~In the event of a disabled~~
49 ~~winch or winches, or~~

49 ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
50 ~~thereby.~~

51 24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
52 ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,~~
53 ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both~~
54 ~~of which are to be included in all bills of lading issued hereunder:~~

55 U.S.A. Clause Paramount
56 ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods Sea Act of the United States, approved April~~
57 ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
58 ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
59 ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

50 Both to Blame Collision Clause
51 ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
52 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
53 ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

164 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166 ~~owners as part of their claim against the carrying ship or carrier.~~
167     25.  The vessel shall not be required *to force ice or follow ice breakers,* to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging.
170     26.  Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *acts of pilots and tugboats (however vessel remains on hire in case the pilots/tugboats/linesmen etc. go on strike),* insurance, crew, and all other matters, same as when trading for their own account.
172     27.  A commission of ~~2 1/2~~ *1.25* per cent is payable by the Vessel and Owners to *banchero costa & s. s.p.a.,* Genoa, to be paid and
173 *deducted by Charterers from hire payment, plus 1.25% to Tramp Maritime Piraeus to be paid by Owners,*
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175     28.  An address commission of 2 1/2 per cent payable to ............*Charterers*................................................ on the hire earned and paid under this Charter.

*Clauses 29 to 90, inclusive, as attached, to be deemed as fully incorporated in this Charter Party.*

        *THE OWNERS*                              *THE CHARTERERS*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

| ADDITIONAL CLAUSES TO THE M/V "ANNA L"<br>CHARTER PARTY DATED 21ST NOVEMBER 2007 |
|---|

**Clause 29.**

Owners guarantee that the vessel's details, as listed herebelow, are given with all reasonable accuracy on the basis of the vessel's plan and on experience obtained from previous voyages:

**M/V "ANNA L"**

- EX NAME: "FRANGISKOS C.K."
- VSL'S TYPE: FUTURE 32 - BULK CARRIER
- SUMMER DWT/DRAFT : 37611 / 10,764
- LOA/LBP/BEAM/DEPTH MOULDED : 187.03/178.0/28.4/15.30
- GRT / NRT : 22215 / 12032
- NUMBER OF HOLDS/HATCHES: 5/5
- CRANES: 5 X 25 TONS

- VSL'S FLAG        : GREEK
- PORT OF REGISTRY    : PIRAEUS
- OFFICIAL NO.      : 8722
- CALL SIGN        : SYLO
- VSL'S EX NAME    : FRANGISKOS C.K.
- VSL'S CLASS      : ABS
- BUILT          : 1984 - IHI JAPAN
- IMO NBR        : 8306993
- CLASS          : ABS
- INMARSAT C NBR    : 423720410

- VESSEL STRENGHTHENED FOR CARRIAGE OF HEAVY CARGOES
  HOLDS NO.2 + 4 MAY BE LEFT EMPTY

- OWNERS : SOLOMON SEA ENTERPRISES S.A. - PANAMA
          MANAGERS: LOMAR SHIPPING & MANAGEMENT INC.
          25, AKTI MIAOULI STREET
          185-35 PIRAEUS - GREECE
          TEL: +30-210-4227444/6  FAX: +30-210-4227450
          TLX: 213300  E-MAIL: LOMAR@HOL.GR

- H&M UNDERWRITERS : JLT RISK SOLUTIONS - LONDON
  H&M VALUE: USD 10 MILLION
- P+I CLUB : NORTH OF ENGLAND

- SPEED/CONSUMPTION:
  AT SEA:
        ABT 13.5 KNTS BALLAST/ABT 13.0 KNTS LADEN ON ABT 24MT IFO
        PLUS ABT 2MT MDO
        N PORT:
        IDLE: ABT 2 MTS MDO
        WORKING GEAR: ABT 2 TO 4 MTS MDO DEPENDING ON NBR OF
        CRANES WORKING

*(left margin, vertical text)* TRAMPMARITIME INC. 23 FILIPPOU st. & AKTI DILAVERI - PIRAEUS 18533 TEL: (+30)210 4133228 - FAX: (+30)210 4133889 e-mail: chartering@trampmaritime.gr

1

| ADDITIONAL CLAUSES TO THE M/V "ANNA L"<br>CHARTER PARTY DATED 21ST NOVEMBER 2007 |
| :---: |

**TRAMPMARITIME INC.**
23 FILIPPOU st. & AKTI DILAVERI - PIRAEUS 18533
TEL: (+30)210 4133228 - FAX (+30)210 4133389
e-mail: chartering@trampmaritime.gr

VESSEL'S SPEED AND CONSUMPTION GIVEN ON THE BASIS OF GOOD
WEATHER CONDITIONS, WINDS NOT EXCEEDING BF4/DS3, NO ADVERSE
CURRENTS AND NO NEGATIVE INFLUENCE OF SWELL.

VESSEL'S MAIN ENGINE CONSUMES MDO WHEN MANOUVERING / SAILING
/ TRADING IN NARROW OR CONFINED / RESTRICTED WATERS, LEAVING
OR ENTERING PORTS, CANALS, RIVERS, SHIFTING WITHIN PORT A/OR
ENGINE STANDBY, DRIFTING ETC.

FUEL GRADE : IFO 280 CST RME ISO 8217 1996
DIESEL GRADE: DDO - DMB

- TYPE OF HATCH COVERS :
  HYDRAULIC IHI MACGREGOR END STOWING 4/5 PANELS TYPE

- HATCH DIMENSIONS:
  NO.1      16.0 x 12.6 MTRS
  NO.2-5   17.6 X 14.4 MTRS

- GRAIN/BALE CAPACITY PER HOLD:

| HOLD | GRAIN | | BALE | |
| :--- | :--- | :--- | :--- | :--- |
| 1 | 7900.1 M3 | 278989 FT | 7612.0 M3 | 268815 FT |
| 2 | 9435.0 M3 | 333194 FT | 9193.8 M3 | 324676 FT |
| 3 | 9427.6 M3 | 332933 FT | 9055.2 M3 | 319781 FT |
| 4 | 9439.1 M3 | 333339 FT | 9128.5 M3 | 322370 FT |
| 5 | 9663.3 M3 | 341257 FT | 9404.6 M3 | 332120 FT |
| | ------------ | ------------ | ------------ | ------------ |
| | 45865.1 M3 | 1619712 FT | 44393.1 M3 | 1567762 FT |

- CARGO GEAR:
  5 ELECTRO-HYDRAULIC CRANES - SWL 25 MTS EACH
  POSITION: NO1 FWD NO1 HOLD
          NO2 BETWEEN HOLDS NO1 & NO2
          NO3 BETWEEN HOLDS NO2 & NO3
          NO4 BETWEEN HOLDS NO3 & NO4
          NO5 BETWEEN HOLDS NO4 & NO5

- CONSTANT EXCLUDING FW: 400 MTS
- FUEL TANKS CAPACITY: IFO 2100 MTS
- DIESEL TANK CAPACITY: MDO 145 MTS
- FW TANKS CAPACITY: 390 MTS
- FW DAILY CONSUMPTION: 8 MTS

ALL DETAILS ABOUT AND WITHOUT GUARANTEE.

- Winter dwt: 36580 MT
- Tank top strengths: 20,9 MT/M2

2

---

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007**

---

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI OLIVERI - PIRAEUS 185 33
TEL: (+30)210 4133228 - FAX: (+30)210 4135539
e-mail: chartering@trampmaritime.gr

- Hatch strengths: 2,5 MT/M2
- Main deck strengths: 3,7 MT/M2

- Tank top dimensions:

|        |         | WIDTHS | LENGTHS |
|--------|---------|--------|---------|
| (1)    | 8  fore | 20,8 aft | 24.6 |
| (2-4)  | 20,8    | 20,8   | 24,6 |
| (5)    | 20,8    | 20,8   | 25,4 |

ALL DETAILS ARE "ABOUT" "WITHOUT GUARANTEE".

- OWNERS CONFIRM VESSEL IS SINGLE DECK SELF TRIMMING BULK CARRIER WITH E-B AFT.
- OWNERS CONFIRM VESSELS HOLDS/HATCHES ARE CLEAR AND UNOBSTRUCTED WITHOUT CENTRELINE BULKHEAD AND FULLY SUITABLE FOR GRAB/MECHANICAL DISCHARGE.
VESSEL IS SUITABLE FOR GRAB DISCHARGE BUT SHE DOES NOT HAVE GRABS.
- OWNERS GUARANTEE VESSEL IS NOT BLACKLISTED.
- VESSEL HAS IHI CRANES
CRANES OUTREACH NORMAL 4.5 MTRS UPTO MAX 7.8 MTRS AT RIGHT ANGLE.
CRANES CAN LIFT 25 MTS BUT ALWAYS WITHIN CRANES SAFETY LIMITS.
- VESSEL HAS ONLY NATURAL VENTILATION. CHARTERERS HAVE TO GIVE CLEAR VENTILATION INSTRUCTIONS TO THE MASTER IN WRITING BEARING IN MIND VESSEL HAS ONLY NATURAL VENTILATION.
- VESSEL IS NOT CO2 FITTED.
- VESSEL DOES NOT HAVE A60 BULKHEAD INSULATION.

- THE "WITHOUT GUARANTEE" TO REMAIN AFTER THE SHIPS DESCRIPTION HOWEVER THESE WORDS "WITHOUT GUARANTEE" NOT TO APPLY FOR SHIP'S SPEED/CONSUMPTION SUBJECT TO THE UNDERPERFORMANCE CLAUSE AS PER CLAUSE 61.


**Clause 30.**
The vessel to be fully fitted with hatch covers tight and staunch, complete and in good order at all hatches.


**Clause 31.**
Bunkers on delivery to be about 700/750 metric tons of IFO (280 CST) and about 40/50 metric tons of MDO.
Prices are Usd 400 per metric ton for IFO and Usd 700 per metric ton for MDO.
Bunkers on redelivery to be about same quantities as on delivery at same prices.
Any minor differences to be adjusted upon vessel's redelivery.
Bunkers on delivery to be paid together with the first 15 day hire.
Charterers can eventually supply IFO 180 CST to the vessel.

3

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007**

TRAMPMARITIME INC.
23 FILIPPOU st. & AKTI DILAVERI-PIRAEUS 18533
TEL.:(+30)210 4133228 - FAX:(+30)210 4133509
e-mail: chartering@trampmaritime.gr

**Clause 32.**
Vessel to be delivered with valid deratization certificate on board and if this does not cover the whole period of time charter and fumigation is necessary, cost of same and detention to be for Owners' account, unless fumigation is for cargoes loaded or cargoes intended to be loaded in which case for Charterers' time, risk and expense.

**Clause 33.**
The cost of fresh water which is used by Owners for Charterers services is for Charterers' account. This does not mean that the Owner/ship has the obligation to provide to Charterers for their needs any fresh water at all.

In case Charterers require some minor fresh water quantity then the Charterers have to arrange same at their time risk and expense provided the Master/Owners approve and the ship's tanks allow.

Garbage removal for galley only to be for Owners' account, rest garbage for Charterers' account. compulsory garbage removal as well as watchmen is for Charterers' account.

**Clause 34.**
Charterers have the privilege of using suitable bulldozers with rubber tyres in hold at their risk and expenses but only upto permissible top-tank strength.

Vessel shall be suitable for grab discharge as per her characteristics and no cargo is to be loaded in places inaccessible to grab discharge or in deeptanks.

Vessel is not grabs fitted i.e. there are no grabs on board.

**Clause 35.**
Vessel is not blacklisted by U.S. Longshoremen Union.

**Clause 36.**
Owners warrant that the vessel is eligible for bunkers in the United States of America, its territories and possessions in accordance with U.S. Department of Commerce, Office of International Trade, Directive no. 705.

Owners warrant that the vessel has oil pollution certificate and complies with U.S. Water Quality Improvement Act 1970 or equivalent.

**Clause 37.**
Charterers shall redeliver the vessel with clean swept holds paying the Owners also the amount of Usd 25,000 lumpsum payable together with the first 15 day approximate redelivery notice.

4

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI OLIVERA-PIRAEUS 185 33
TEL.:(+30)210 4132224-FAX:(+30)210 4133589
e-mail: chartering@trampmaritime.gr

---

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

---

For the purpose of this new charter party dated 21.11.07 this cleaning (from Gaeta to Casablanca) is agreed to be as an intermediate holds cleaning for which all the intermediate clauses in the charter party dated 1st August 2007 are valid and fully applicable except that the charts will not have to pay any ILOHC for it. (Charterers have paid already the USD 25.000= from present cp)

Intermediate hold cleaning: USD 1,000 per hold excluding removal/disposal, see also Clause 83.

**Clause 38.**
Unless the provision contained in the following paragraph, the General Clause Paramount has to be expressly incorporated in all Bills of Lading issued in accordance hereof.

**Clause 39.**
Stevedores to be appointed and paid by the charterers. Master to notify charterers or their agents of any damages caused by stevedores within 24 hours from occurrence, except for hidden damages which is to be reported as soon as practical after discovery but no later than completion of discharge of each particular voyage.
The master shall also endeavour to obtain written acknowledgement of the damage and liability from the concerned stevedores on occurrence. Charterers will remain ultimately responsible for damages caused by stevedores provided master has reported same as provided herein irrespective if he has obtained written acknowledgement from stevedores or not.
Any stevedore damages affecting the ships class/seaworthiness/cargo worthiness/trading ability as ascertained by the vessel's class surveyor and/or owners P&I club surveyor to be repaired by the charterers at their risk, expense and time prior to sailing port of occurrence to the satisfaction of owners class surveyor and/or owners P&I club surveyor any unrepaired damage not affecting vessel's class/seaworthiness/cargo worthiness/trading ability may be repaired in owner's time during next regular drydocking and charters to pay repair expenses against vouchers unless an amicable agreement is reached earlier.

**Clause 40.**
When hire is due and not received, the Owners, before exercising the option of withdrawing the vessel from the Charter Party, will give Charterers 3 (three) banking days notice and will not withdraw the vessel if the hire is paid within the 3 (three) days; also Owners are not entitled to claim any interests provided delay in effecting the payment is not due to Charterers' default.

**Clause 41.**
Deleted.

5

**TRAMPMARITIME INC.**
23 FILIPPOU st. & AKTI DILAVERI - PIRAEUS 18533
TEL: (+30)210.4133226 - FAX (+30)210.4133539
e-mail: chartering@trampmaritime.gr

---

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

---

**Clause 42.**
Hire and bunkers to be paid  by direct swift payment to:

EFG EUROBANK ERGASIAS S.A.
SWIFT CODE : EFGB GRAA
83 AKTI MIAOULI STREET - PIRAEUS - GREECE
BENEFICIARY : SOLOMON SEA ENTERPRISES S.A.
ACCOUNT NBR : 0026002922120015 1508
IBAN NUMBER : GR 9302600290000221200151508
CORRESPONDENT BANK : BANKERS TRUST NEW YORK
SWIFT CODE BKTR US 33
A.B.A.NO : 021001033

**Clause 43.**
Should the vessel put back whilst on voyage by reason of an accident or a breakdown, or in the event of loss of time either in port or at sea or deviation upon the course of the voyage caused by sickness or accident to the crew or any other person on board the vessel (other than passenger and supercargo travelling by request of the Charterers) or by reason of refusal of the Master/crew to perform their duties, the hire shall be suspended from the time of the inefficiency until the vessel is again ready to resume her service from a position not less favourable to Charterers than that at which such loss of time commenced.

**Clause 44.**
Deleted.

**Clause 45.**
Number of holds which may be left slack without requiring bagging, strapping and securing: as per vessel's loading manual.

**Clause 46.**
Notwithstanding the provisions of Clause 8, Charterers, sub charterers, and/or their agents are hereby authorized by the Owners to sign, on behalf of the Master/Owners, Bill of Lading as presented in strict conformity with mate's receipts without prejudice to this charter party, but Charterers to be responsible for all consequences that might result from Charterers, sub-Charterers and/or their agents signing bill of lading not in strict conformity with mate's receipt including master's remarks.

**Clause 47.**
Bimco Standard Law And Arbitration Clause 1998 (English law and arbitration in London) which includes small claims procedure upto Usd 50,000.00 to apply.
The LMAA rules current at the time when the arbitration proceedings are commenced, always apply.

6

**TRAMPMARITIME INC.**
23 FILIPPOU st. & AKTI OKLAVER·PIRAEUS 18533
TEL: (+30)210 4133223·FAX (+30)210 4133539
e-mail: chartering@trampmaritime.gr

| ADDITIONAL CLAUSES TO THE M/V "ANNA L" |
| CHARTER PARTY DATED 21ˢᵀ NOVEMBER 2007 |

**Clause 48.**
Deleted.

**Clause 49.**
Upon her delivery or her arrival at the first loading port, following her delivery, vessel to be ready in all respects, including holds clean, dry, swept, staunch, without dead or alive insects, loose rust scale, for the loading of phosphate and petcoke.

On delivery, if vessel fails to pass holds inspection, then time not to count from the time of rejection until acceptance unless if loading commences in the holds that have been approved in which case prorata.

**Clause 50.**
Vessel shall comply with all the acts, regulations, and/or any other legislation whatsoever of the country/ies in and/or between which the vessel will be employed. In this close respect, the Owners have to ensure that the vessel will be in possession, at all times during the currency of this charter party, of valid and up-to-date certificates of efficiency as required in connection thereto.
Whether the vessel and/or the Owners will not comply with the above properly, the Charterers will have the right to suspend the hire for the time thereby lost.

Vessel has trim and stability book showing that she is in compliance with NCB's regulations otherwise any additional trimming to be effected in Owners' time and expenses.

**Clause 51.**
Charterers to have the benefit of the Owners' Protection and Indemnity Association as far as the rules permit.
Charterers to have the benefit of any return Insurance Premium received by Owners from Underwriters (as and when received from Underwriters) by reason of the vessel being in port for a minimum period of 30 days, provided vessel is on hire.

Charterers' P&I Club: Steamship.

**Clause 52.**
Basic War Risk Insurance and War Risk Bonus to Master and Crew to be for Owners' account and any additional War Risk Insurance Premium and Extra War Bonus paid by Owners which result from Charterers trading vessel to areas which require such additional insurance cover and bonus shall be paid by Charterers, but not exceeding minimum London Underwriters scale.
"Bimco Conwartime 1993" to apply for the Charter Party and "Bimco Voywar 1993" to apply in the Bills of Lading.

7

ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ˢᵀ NOVEMBER 2007

**TRAMPMARITIME INC.**
23 FILIPPOU st. & AKTI DILAVERI · PIRAEUS 185 33
TEL.:(+30)210 4133228 · FAX:(+30)210 4133359
e-mail: chartering@trampmaritime.gr

**Clause 53.**
Joint on-hire bunker survey to be carried out at first load port and joint off-hire bunker
survey at last discharge port at Charterers' time. Each party to appoint and pay for their
own surveyor. Owner/vessel will be represented by master/chief engineer.

**Clause 54.**
Should either before or after vessel is delivered to time-Charterers war operations break
out between any two of the following great powers: U.S.A., U.S.S.R., China, Argentina,
Germany, Greece, Brazil, Italy seriously affecting the due fulfilment of this time-
charter, Owners and/or Charterers have right to cancel this Charter Party and the Charter
Party shall be considered henceforward null and void. Also the Charter to be
automatically terminated should the Government of the vessel's flag requisition the
vessel.
If the vessel has cargo on board on such occurrences, this charter party is intended to be
thrown up on dropping last outward sea pilot after completion of discharge at last
discharging port. Charterers paying hire and bunkers till the ships redelivery as per
Charter Party.

**Clause 55.**
Owners warrant that the vessel's crew is and will be employed under terms/conditions
acceptable to the I.T.F. or equivalent - the vessel is covered by International Seamen
and Mutual Labour Association of Philippine (Collective Bargaining Agreement ISLA)
- and that it is understood that the vessel will comply with any and all Safety
Regulations and/or requirements in effect at port/s of loading and/or port/s of
discharging.
In the event of any delay to the vessel caused by reason of the vessel's failure to meet
any such Safety Regulations, vessel shall be off hire for all time lost and the Owners
shall be responsible for any and all extra expenses incurred including stevedores stand-
by time resulting from such failure.

Vessel is Greek flag.

**Clause 56.**
Should the vessel be seized or detained or arrested or delayed by any authority due to
Owners'/vessel's fault (either judicial or not) during the currency of this charter party,
the Charterers' liability for seizure or detention or arrest or delay is ceased forthwith
from the time of her seizure or detention or arrest or delay and all the time lost by this
reason shall be treated as off-hire until the vessel is again in full efficiency and resumes
her service from a position not less favourable to the Charterers than that at which such
loss of time commenced.
Any extra directly related expenses incurred by and/or during the above seizure or
detention or arrest or delay to be for Owners' account, unless such seizure or detention
or arrest is caused by Charterers and/or sub-charterers and/or their agents/servants.

8

TRAMPMARITIME INC.
23 FILIPPOU str. # ARTI OLIVERA-PIRAEUS 18533
TEL.: (+30)210 4133228 - FAX: (+30)210 4133539
e-mail: chartering@trampmaritime.gr

> **ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
> **CHARTER PARTY DATED 21ST NOVEMBER 2007**

Without prejudice to the rights derived from Clause 15, the Charterers are entitled to deduct from the hire all those sums for claims which involve loss of use of the vessel and/or which prejudice the Charterers themselves in the use of her if fully substantiated and agreed with Owners.

**Clause 57.**
The Charterers have the right to instruct Master to utilize the vessel's maximum water ballast capacity in order to bring down vessel's height to get into position under loading and/or discharging appliances however in conformity with free board and safety regulations. In case of ballasting one hold due to excessive vessel's airdraft vessel not to be placed off-hire during period of deballasting drying and preparing holds for loading.

**Clause 58.**
Cargo claims to be settled in accordance with NYPE interclub agreement as amended 1996 or latest amendment.

**Clause 59.**
The Charterers shall not be held responsible for loss sustained by the vessel through negligence of pilots, tug-boats or linesmen, who although employed by Charterers shall be deemed to be the servants of the Owners and under their instructions.
However the vessel remains on hire in case the pilots/tug boats/linesmen etc. go on strike.

**Clause 60.**
Should the vessel remain off-hire for a period of at least 25 days then Charterers have the option to cancel this Charter Party without further consequences to the parties. If at the time when vessel is in such off-hire she has cargo on board then the cancellation of the Charter Party will apply on completion of discharge of such cargo.

**Clause 61.**
**UNDERPERFORMANCE CLAUSE**
The vessel shall be capable at all times during the currency of this charter of steaming as per description.

The charterers may in their option and their cost engage Oceanroutes or similar service to monitor the vessel's course, position, speed, in order to maximise the vessel's performance.

Master is to follow Oceanroutes or similar service's suggestions concerning navigation but master, at his reasonable discretion may not follow suggested route.

Any deviation to be advised as soon as possible to Oceanroutes or to the charterers stating reason. In the event on any discrepancy or dispute between deck log and

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI DILAVERI - PIRAEUS 18533
TEL: (+30)210 4132231 - FAX: (+30)210 4133509
e-mail: chartering@trampmaritime.gr

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007**

Oceanroutes or similar service, the dispute to be solved amicably between Charterers and Owners. If not then matter to be referred to the arbitration/LMAA in London.

**Clause 62.**
Charterers have the option to put on vessel's deck vacuvators/cranes subject to vessel's permissible deck strength for discharging operations. Master/crew will cooperate/assist during such operations. Cost/time for securing/lifting vacuvators, cranes on and off the vessel to be for Charterers' account.

**Clause 63.**
Should Bills of Lading not arrive at discharging port(s) in time then Owners to release the entire cargo without presentation of original Bills of Lading if so instructed by the Charterers against presentation of Letter of Indemnity in accordance with Owners' P. and I. Club standard format signed by Charterers only.

No liner, waybills, through, transshipment or combined transport bills of lading are to be issued or signed under this charter party.
All Bills of lading to incorporate all terms and conditions of the Charter Party and in particular the lien and the arbitration clause.

**Clause 64.**
**I.S.M. CLAUSE:**
From the date of coming into force of the International Safety Management (I.S.M.) code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and the " company " (as defined by the I.S.M. code) shall comply with the requirements of the I.S.M. code.
Upon request the Owners shall provide a copy of the relevant Document of Compliance (D.O.C.) and Safety Management Certificate (S.M.C.) to the Charterers.
Except as otherwise expressly provided in this charter party, loss, damage, expense or delay caused by the failure on the part of either the vessel, the Owners or "the company" (as defined by the I.S.M. code) to comply with the I.S.M. code shall be for the Owners' account.

**Clause 65.**
Deleted.

**Clause 66.**
Deleted.

**Clause 67.**
Fixture to be kept strictly private and confidential.

**TRAMPMARITIME INC.**
23 FILIPPOU str. & AKTI DILAVERI - PIRAEUS 185 33
TEL.: (+30)210 4132224 - FAX: (+30)210 4133539
e-mail: chartering@trampmaritime.gr

---

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

---

**Clause 68.**
**ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005**

**(a)(i)** The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

**(ii)** Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

**(iii)** Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

**(b)(i)** The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all sub-charterers are likewise provided to the Owners and the Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

*"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".*

**(ii)** Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

**(c)** Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

**(d)** If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

11

TRAMPMARITIME INC.
23 FILIPOU str. & AKTI DILAVERI - PIRAEUS 185 33
TEL.: (+30)210 413 3228 - FAX: (+30)210 413 3539
e-mail: chartering@trampmaritime.gr

> **ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
> **CHARTER PARTY DATED 21ST NOVEMBER 2007**

**Clause 69.**
**BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005**

(a) Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and (ii) the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

## BUNKER QUALITY CONTROL CLAUSE FOR TIME CHARTERING

(1)  The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) mutually agreed under this Charter.
(2)  At the time of delivery of the Vessel the Owners shall place at the disposal of the Charterers, the bunker delivery note(s) and any samples relating to the fuels existing on board.
(3)  During the currency of the Charter the Charterers shall ensure that bunker delivery notes are presented to the Vessel on the delivery of fuel(s) and that during

12

**TRAMPMARITIME INC.**
23 FILIPPOU st. & ANTI OLIVIER · PIRAEUS 18531,
TEL.: (+30)210 4133223 · FAX: (+30)210 4133539
e-mail: chartering@trampmaritime.gr

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

bunkering representative samples of the fuel(s) supplied shall be taken at the Vessel's bunkering manifold and sealed in the presence of competent representatives of the Charterers and the Vessel.

(4)     The fuel samples shall be retained by the Vessel for 90 (ninety) days after the date of delivery or for whatever period necessary in the case of a prior dispute and any dispute as to whether the bunker fuels conform to the agreed specification(s) shall be settled by analysis of the sample(s) by (...) or by another mutually agreed fuels analyst whose findings shall be conclusive evidence as to conformity or otherwise with the bunker fuels specification(s).

(5)     The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the ship's engines or auxiliaries the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption nor for any time lost and any other consequences.

**Clause 70.**
**CARGO ALLOWED**
Only bulk harmless, non IMO, non radioactive, green delayed petcoke and phosphate.

Cargo to be loaded and carried as per IMO / U.S. Coast Guard and similar authorities regulations and recommendations including Solas and as per vessel's characteristics.

**Clause 71.**
Both to Blame Collision, General Average and the New Jason Clause, Bimco General Clause Paramount, Bimco Double Banking Clause, to be incorporated and form part of this charter party and in all Bills of Lading issued hereunder.
All said clauses to be read as per standard printing and not to be influenced by any mistyping.
Bunker Quality Control Clause For Time Chartering, Bimco Bulk Carrier Safety Clause, Bimco Standard Law And Arbitration Clause 1998, Bunker Fuel Sulphur Content Clause For Time Charter Parties 2005, USA Trade Act Unique B/L Identifier Clause, USA Security Clause For Time Chartering, New Both To Blame Collision Clause, Bimco ISM/MTSA Clause For Time Charter Parties 2005, Bimco ISPS Clause, U.S.A. Clause Paramount, Bimco USA Customs Advance Notification / AMS Clause For Time Charter Parties, Stowaway Clause For Time Charterers, Bimco Ice Clause For Time Charter Parties, Bimco Average Bond Clause, Conwartime 1993 War Risk Clause and Anti Drug Abuse Act 1986 Clause for Time Charter Parties to form part of this Charter Party.

TRAMP MARITIME INC.
23 FILIPPOU str. & KATI OLIVIERI- PIRAEUS 18533
TEL: (+30)210 4133223 - FAX (+30)210 4133559
e-mail: chartering@trampmaritime.gr

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

**Clause 72.**
**TRADING EXCLUSIONS**

Trading always within Institute Warranty Limits, (now named INTERNATIONAL
NAVIGATING LIMITS) always via good safe port (s), safe berth(s), safe anchorage (s)
and always safely afloat (always afloat always accessible at all times of the tide -
NAABSA is not allowed), always in lawful trades only, but the vessel is not allowed to
load, discharge, bunker, trade or call for any purpose in countries, places or areas where:

(a) War has been declared, is about to be declared or has broken out without any
such declaration or where hostilities are imminent or in progress, including civil
war, insurrection, revolution etc.

(b) In C.I.S., Syria, Libya, including Gulf of Sidra Sirte, U.N. or E.E.C.
sanctioned countries, Israel, Turkish Occupied Cyprus, former Yugoslavia
states, Albania, any country prohibited by the vessel's flag state and any gypsy
moth infested area.

Trading always within ice free ports, vessel not to force, nor push ice neither to follow
icebreaker(s).

No cargo to be loaded for final destination where United Nations or European
Economic Community sanctions and or embargo exist.

-Vessel not to trade any countries black listed by the USA for non-implementation of
the ISPS code (presently Albania).

- For any areas included in Marpol Annex VI to require low sulphur fuel Charterers to
arrange supply of such fuel at their time/risk/expense.

- Extra war risk insurance including B+T and crew war bonus if any for Charterers'
account payable upon Owners presentation of relevant vouchers (copies or via fax or
email), always to be in line with minimum quotation of London market.

**Clause 73.**
**U.S. INCOME TAX - TIME CHARTERS**

Notwithstanding anything else contained in this charter party, any tax imposed by the
provisions of the U.S. Tax Reform Act of 1986, as amended from time to time, and set
forth at section 887 of the Internal Revenue Code of the U.S., (including any successor
provision thereto and any regulations applied by the U.S. internal revenue services in
respect of such tax) and payable by the Owners in respect of gross transportation
income derived under this charter party from the vessel's operation to and from U.S.
ports and from cargoes delivered to or shipped from U.S. ports, shall be covered by
charterers and paid to owners together with the relevant hire payment due at the time, on
the presentation of Owners' calculation/invoice. Owners shall not be required to seek
exemption from said tax, even if they could qualify for such exemption.

14

**TRAMPMARITIME INC.**
23 FILIPPOU str. & ANT OLIVER - PIRAEUS 185 33
TEL.:(+30)2104153220 - FAX:(+30)2104153309
e-mail: chartering@trampmaritime.gr

| ADDITIONAL CLAUSES TO THE M/V "ANNA L" |
| CHARTER PARTY DATED 21ST NOVEMBER 2007 |

**Clause 74.**
Any claim by Charterers relating to the performance of the vessel and/or the Vessel's equipment including speed claim are to be submitted to Owners in the form of a statement of claim with supporting documents within 60 days of completion of the voyage or otherwise to be waived and nullified.

**Clause 75.**
All bunker supplied by Charterers during the course of the charter party to be in accordance with the specifications given in the vessel's description.

**Clause 76.**
All vessel's certificates and official documents are in English language. If due to trading under this time charter, special certificates, documentation and/or translation of same will be required by local authorities, Charterers to arrange and be responsible for same at their time and expense.
Any delay caused to vessel as a consequence of non compliance with the above is Charterers' responsibility.

**Clause 77.**
Ref. cargo claims, Charterers are not allowed to negotiate or settle any cargo or other claims including fines for which Owners would be liable. Also they are not allowed to grant time extensions for these claims without having Owners' prior written approval of consent. It is understood that Charterers will keep Owners properly and timely advised for all such claims and also will furnish Owners with all relative documents and information in Charterers' possession.

**Clause 78.**
Prior to making any claims for over-consumption / off hire / under performance Charterers give due credit for bunkers or time saved.

**Clause 79.**
Vessel is suitable for grab loading / discharging provided dimension of grabs does not exceed vessel's tanktop strength and is suitable for vessel's holds characteristics.

**Clause 80.**
Any cranes breakdown due to stevedore mishandling to be for Charterers' account and vessel to be on full hire.

**Clause 81.**
Charterers not to sublet the vessel to Nigerians, Haitians, Nicaraguans, Pakistani, Israeli, Iraqi registered/based/controlled/owned/domiciled Companies.

TRAMPMARITIME INC.
23 FILIPPOU str. & ANTI OLAVERA · PIRAEUS 18534
TEL:(+30)210 4133228 · FAX:(+30)210 4133309
e-mail: chartering@trampmaritime.gr

| ADDITIONAL CLAUSES TO THE M/V "ANNA L" |
| CHARTER PARTY DATED 21ST NOVEMBER 2007 |

Charterers also not to sublet vessel to the companies based / owned /registered / controlled / domiciled in the countries against whom U.N. sanctions may be imposed time to time.

**Clause 82.**

Charterers agree that they will not authorize, incur, cause to be incurred or permit to be continued, any maritime lien or encumbrance on the vessel. Charterers will use best efforts to notify all suppliers, service providers and vendors of the existence of this prohibition of lien clause prior to or at the time the services and / or supplies are provided. The failure by Charterers, their agents and / or representatives to make such notification shall constitute a breach of this charter party.

**Clause 83. Intermediate hold cleaning**

Owners/ship are not responsible for the cleanliness inspection of the ship for loading her 2nd cargo of green delayed petcoke which in anyway is done at Charterers' time, risk and expense and the ship remains always on hire.

Even if this intermediate hold cleaning is carried out by the crew, same is done under Charterers' responsibility, risk and expense and the ship remains always on hire.

If any residues removal ashore by containers or otherwise is required same to be done by Charterers at their time, risk and expense.

The crew, if local regulations permit, also if the weather permits, and also if there is sufficient time enroute to the load port for this 2nd cargo, to carry out only normal hold cleaning to pass cleanliness inspections but as said same to be done at Charterers' time, risk and expense.
Charterers providing/paying also at their expense any special equipment and/or materials/chemicals etc.. which may be required for hold cleaning, including fresh water for hold fresh water washing.

For the intermediate hold cleaning, Charterers to pay to the Owners Usd 1000 per hold with next hire payment due.

If vessel does not pass subsequent survey(s) due to cargo residues found in holds and/or not dried condition etc., owners are not to be held responsible for time lost and extra expenses occurred and Charterers to remain ultimately responsible. Vessel remains on hire and all expenses related thereto to burden Charterers entirely.

In case shore regulations/authorities/unions etc, do not permit cleaning to be carried out by vessel's crew, shore labour to be employed by Charterers at their time and expense.

For cleaning purposes to load the phosphorus from Casablanca and as per master's previous advise the cleaning requires about 4.5/5 days and this is of course without guarantee and also provided that the weather permits.

16

TRAMPMARITIME INC.
23 FILIPPOU st. & AKTI DILAVERI - PIRAEUS 18533
TEL: (+30)210 4133226 - FAX (+30)210 4133399
e-mail: chartering@trampmaritime.gr

---

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

---

Master in any case to follow strictly charterers instruction but being this cleaning considered as intermediate to be under charterers' responsibility.

### Clause 84. Shifting/Wrapping

Shifting by wrapping by the crew is allowed provided local authority allows.
However if tug boats and/or pilots are required same to be arranged and paid by Charterers.

### Clause 85.

The Charterers will always leave the vessel in a safe and seaworthy trim and with cargo on board safely stowed, dunnaged and secured to the master's satisfaction for all shifting between berths or places and all passages between ports allowed under this charter party, in their time and at their expense.

### Clause 86.

For the minor husbandries, Owners to have the right to use Charterers agents free of agency fees.

### Clause 87.

All taxes on freight and sub freights, hire/s and sub hires, or cargo payable to any country or authority during the currency of this charter party to be for Charterers' account. Charterers will also pay any taxes imposed on the ship by virtue of her trading.

### Clause 88.

Deleted.

### Clause 89.

Local time to apply for delivery time and hire calculations to be in G.M.T.

### Clause 90.

Ref. Charterers' message basis 27ft SWAD Chekka and with bunker ron as on delivery vessel can lift about 24,800 mts. However with petcoke stowage factor as advised 46' can lift in holds 2/3/4 about 21730 mts.

17

TRAMPMARITIME INC.
23 FILIPPOU st. & AKTI DILAVERI - PIRAEUS 18533
TEL.: (+30)210 4133228 - FAX: (+30)210 4133599
e-mail: chartering@trampmaritime.gr

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"**
**CHARTER PARTY DATED 21ST NOVEMBER 2007**

## BIMCO DOUBLE BANKING CLAUSE

(A) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading and discharging of cargo and/or bunkering.

(B) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(C) Without prejudice to the generality of the Charterers' right under (A) and (B), it is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (A) and (B) if in his reasonable opinion it is not safe so to do.

(D) The Owners shall be entitled to' insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

But the insurance premium should not be higher than Lloyd's quote and against supporting vouchers.

(E) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**BOTH TO BLAME COLLISION CLAUSE**

If the vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of the vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying ship or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying vessel or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respects to a collision or contact.

And the Charterers shall procure that all bills of Lading issued under this Charter Party shall contain the same clause.

18

TRAMPMARITIME INC.
23 TRIP/POU st. & AKTI DILAVERI - PIRAEUS 185 33
TEL:(+30)210 4133228 - FAX(+30)210 4133549
e-mail: chartering@trampmaritime.gr

| ADDITIONAL CLAUSES TO THE M/V "ANNA L"<br>CHARTER PARTY DATED 21ST NOVEMBER 2007 |
|---|

## GENERAL AVERAGE

General Average shall be adjusted, stated and settled according to the York - Antwerp Rules 1994 or any subsequent modification thereof, in London unless another place is agreed in the Charter.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and the Consignee expressly renounce the Belgian Commercial Code, Part II, Art. 148.

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

And the Charterers shall procure that all Bills of Lading issued under this Charter party shall contain the same clause.

## CONWARTIME 1993

I)    For the purpose of this clause, the words :

(A)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel and the Master; and

(B)  "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

19

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI DILAVERI - PIRAEUS 18533
TEL: (+30)2104133228 - FAX: (+30)2104133509
e-mail: chartering@trampmaritime.gr

**ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007**

2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea) or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

4)
(a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention; the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because pursuant to the Charterers' orders, the Vessel is within or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5) If the Owners become liable under terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The Vessel shall have liberty :

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any other way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails or other Government to whose laws the Owners are subject or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

20

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI DILAVERI - PIRAEUS 18533
TEL.(+30)210 4133228 - FAX (+30)210 4133589
e-mail: chartering@trampmaritime.gr

## ADDITIONAL CLAUSES TO THE M/V "ANNA L" · CHARTER PARTY DATED 21ST NOVEMBER 2007

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) if in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) if in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

## BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

(a)   (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS ISPS CODE) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b)   (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and SSO/Master. Furthermore, the

TRAMPMARITIME INC.
23 FILIPPOU St. & AKTI OLIVERH-PIRAEUS 185 33
TEL.: (+30)210 4133223 - FAX: (+30)210 4133569
e-mail: chartering@trampmaritime.gr

ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007

Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c)  Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners'
negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d)  If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## BIMCO US CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTER PARTIES

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond);
iii) Provide the Owners with a timely confirmation of i) and ii) above; and
iv)  Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and       provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/ or damage whatsoever (including consequential loss and/ or damage) and/ or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on hire.

TRAMPMARITIME INC.
23 FILIPPOU str. & AKTI DILAVERI - PIRAEUS 18533
TEL.: (+30)210 4132324 - FAX: (+30)210 4135539
e-mail: chartering@trampmaritime.gr

---

ADDITIONAL CLAUSES TO THE M/V "ANNA L"
CHARTER PARTY DATED 21ST NOVEMBER 2007

---

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for
those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

## U.S. ANTI DRUG ABUSE ACT 1986

a) In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986, or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the vessel.

Non compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the vessel harmless and shall keep them indemnified against all claims wahtsoever which may arise and be made against them individually or jointly.

Furthermore all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account and the vessel shall remain on hire.

Should the vessel be arrested as a result of the Charterers' non-compliance with the provisions of this Clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the vessel is released and at their expense put up bail to secure release of the vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the vessel's personnel.

b) In pursuance of the provisions of sub-clause (a) above, the Owners and the Charterers warrant that they shall both become signatories to the Sea Carrier Initiative Agreement on signing this Charter Party or on delivery of the vessel under this Charter, which ever is the earlier, and will so remain during the currency of the Charter.

THE OWNERS                                    THE CHARTERERS

